## FISHER v. WESTERN CAROLINA BANK.

(Filed June 6, 1903.)

1. ASSIGNMENTS FOR THE BENEFIT OF CREDITORS—*Liens— Corporations—The Code, Sec. 685—Banks and Banking.*

   The commencement of a suit by creditors for themselves and all other creditors to set aside a fraudulent deed of assignment by a bank does not create a lien in their favor, where it does not increase the assets of the corporation.

2. ASSIGNMENTS FOR THE BENEFIT OF CREDITORS—*Corporations—The Code, Sec. 685—Banks and Banking.*

   An action brought by creditors of a bank within 60 days of the filing of an assignment for the benefit of creditors, to recover their debt avoids such an assignment.

ACTION by Thomas Fisher and others against the Western Carolina Bank and others, heard by Judge *W. B. Councill* and a jury, at September Term, 1902, of the Superior Court of BUNCOMBE County.

The defendant, the Western Carolina Bank, a banking corporation created and existing under the laws of North Caro-

lina, doing business at Asheville, in the County of Buncombe, and being largely indebted to numerous persons, many of whom had deposited money with it, and, among such depositors, to the plaintiff's appellants herein several amounts respectively, executed on the 12th day of October, 1897, a voluntary assignment to Lewis Maddux, its president, and L. P. McLeod, its former cashier, of all its property and property rights of every kind, consisting very largely of lands in said State, in trust to sell the same and, after paying the expenses of the trust, to apply the proceeds of such sale upon various liabilities of that institution, giving preferences to certain of its creditors for large amounts in different classes. This deed was registered in said County of Buncombe on the 12th day of October, 1897.   Thereafter, on the 12th day of October, 1897, the plaintiff appellants, with certain other of said creditors, commenced this action in the Superior Court of said Buncombe County, for the purpose of attacking said assignment upon the ground that it was void as to themselves and the other creditors of said bank because made with the intent to hinder, delay and defraud themselves and such other creditors.   On October 13, 1897, at 11:50 a. m., the plaintiffs filed therein their complaint.   On October 12, 1897, the Battery Park Bank, one of the creditors who were given the first preference in said assignment, commenced in said Superior Court of Buncombe County an action against the Western Carolina Bank alone for the purpose of collecting its debt.   That in said action the said Battery Park Bank, filed an affidavit and thereupon moved for the appointment of a receiver to wind up the affairs of the said bank under Sections 666-668 of The Code.   On October 13, 1897, at 11:30 o'clock p. m., the order was made by Judge Norwood appointing temporary receivers of said bank, and on October 16, 1897, the bond required by said order was filed and the injunction is said action was issued.   The complaint in said

last mentioned action was filed on October 25, 1897. Said complaint alleged the insolvency of the bank and its indebtedness to the plaintiffs and demanded judgment for the recovery of its debt and such other relief as it might be entitled to in the premises.    The summonses in both actions were returnable to the December term, 1897, of the Superior Court of Buncombe County and were duly served and so returned.    At said December term, 1897, an order was made whereby said actions were consolidated, "without prejudice to the rights of any of said suitors to establish a prior lien on the assets of the said bank in the hands of said receivers, if by law they have acquired such preference by such independent suits or by claimants of the bank having become parties thereto.    At the September term, 1902, of the said court this action was brought to trial and a verdict was rendered establishing the indebtedness of the said defendant bank to the plaintiffs and others and also finding that said deed of assignment was made with intent and for the purpose of hindering, delaying and defrauding the plaintiffs and other creditors of the Western Carolina Bank.    Upon the coming in of this verdict the plaintiffs appellant and others then acting with them, moved the court for a judgment for the amounts so found due them from the defendant bank and for judgment that said deed of assignment was fraudulent and void as against the plaintiff and said other creditors.    Plaintiff appellants also moved the court, upon said verdict, for judgment declaring a lien in their favor upon the assets of the bank in the hands of the receivers to the amount of their indebtedness.    This last motion was denied and the court adjudged that the plaintiffs recover of the defendant bank the amounts of their several debts as fixed by the verdict of the jury and further considered and adjudged "That the deed of assignment mentioned in the complaint, dated October 12, 1897, be and the same is hereby declared and decreed fraudulent and void as against the plain-

tiffs creditors of the Western Carolina Bank," to which the plaintiffs excepted and appealed, assigning as error the refusal of the court to render judgment that the plaintiffs are entitled to a lien to the extent of the amount of their recoveries against the defendant bank.

From a judgment denying plaintiffs a prior lien on the assets of the defendant, the plaintiffs appealed.

*F. A. Sondley, Whitson & Keith, Haywood Parker, Frank Carter* and *Tucker & Murphy,* for the plaintiffs.

*Charles E. Jones, Merrimon & Merrimon* and *Merrick & Barnard,* for the defendants.

CONNOR, J., after stating the facts.  Plaintiffs, relying upon the doctrine announced by this court in *Hancock v. Wooten,* 107 N. C., 9; 11 L. R. A., 466, contends that the action brought by them for the purpose of attacking and avoiding the deed of assignment made by the defendant bank and subjecting the property to the payment of the debts of the bank, acquired a lien or preference in respect to the property and the assets of the bank over other creditors.  The distinction between a general creditor's bill brought in behalf of all the creditors of an insolvent corporation or the estate of a deceased person or to enforce the execution of a trust and administer the fund, and a "judgment creditor's bill" brought "for the purpose of subjecting equitable and other interests which could not be reached and sold under execution, and also for the purpose of removing obstructions to legal remedies, as by setting aside fraudulent conveyances and the like," is discussed and pointed out by Mr. Justice Shepherd in Hancock's case.  It having been held in *Bank v. Harris,* 84 N. C., 206, that under our judicial system, by which legal and equitable remedies are administered by the same court and in one form of action, there was no longer any necessity for the creditor to obtain a judgment before bringing his action

in the nature of a bill in equity to invalidate fraudulent assignments, etc., the term "judgment creditor's bill" is not strictly accurate as applied to our system of procedure. Formerly the judgment creditor having, either by docketing his judgment or running out his execution, acquired a lien or legal preference in respect to lands or other legal assets became entitled upon final decree to the preservation and enforcement of such liens as he had acquired. By filing his bill for the purpose of reaching and bringing within the jurisdiction of the court equitable or non-leviable assets he acquired an equitable lien or, as sometimes said, his bill was treated as an equitable *fi fa.* Shepherd, J., referring to the effect of the change in the procedure, says: "The result of the decision is to render the proceeding still more efficacious, as we think that by its institution it creates a preference by way of an equitable lien whether the interest sought to be subjected be legal or equitable." By reason of this decision of our court much of the very interesting discussion and learning found in the works on equity jurisprudence and the English and American Chancery Reports is of but little practical value in the decision of this case. When the plaintiffs issued the summons in this action they had no lien or rights other than general creditors, nor did the plaintiffs in the case of Battery Park Bank against defendant bank have any such lien. The record presents the question, therefore, whether the plaintiffs' claim for a preference or equitable lien comes within the principle of *Hancock v. Wooten,* 107 N. C., 9.

The assignment was made on the 12th day of October, 1897, and recorded at 9:30 o'clock a. m. on the same day. The summons in the action of Fisher and others (who were named) "and all other creditors of the Western Carolina Bank who may choose to come in and make themselves parties to this action" against the Western Carolina Bank, Lewis

Maddux and L. P. McLeod, was issued and received by the sheriff on the same day and served on October 16, 1897. The complaint was filed October 13, 1897, at 11:50 a. m. The complaint sets out the material allegations in regard to the incorporation, etc., and the indebtedness of the bank to the plaintiffs. The 19th allegation avers "That, as the plaintiffs are informed and believe, said deed of trust or voluntary assignment is fraudulent and void in law as to these plaintiffs, and was executed by defendant with the intent to hinder, delay and defraud the plaintiffs and other creditors of the defendant bank." They demand judgment that they recover the amounts of their debts; that a receiver be appointed; that the deed of trust be declared void, etc. On the same day, October 12, the Battery Park Bank in its own behalf and all other creditors," issued summons against the Western Carolina Bank. This summons was served October 12, 1897. On the same day the plaintiff Battery Park Bank by its cashier, filed an affidavit setting forth the indebtedness of the defendant bank, its insolvency, etc., and stating that it was entitled to have a receiver appointed pursuant to Section 668 of The Code. On the 13th day of October, 1897, at 11:30 p. m., Norwood, J., made an order in said case appointing temporary receivers. Thereafter permanent receivers were appointed. The complaint in the action brought by the Battery Park Bank was filed October 25, 1897, alleging the insolvency of the bank and its indebtedness to the plaintiff and demanding judgment for its debt and such other and further relief in the premises as it may be entitled to. In this action an order was made at the return term consolidating all of the actions brought against the defendant bank without prejudice to the rights of any of said suitors to establish a prior lien on the assets of the defendant bank in the hands of said receivers if by law they have acquired such preference by such independent suits or by claimants of the

bank having become parties thereto. The defendant bank filed its answer denying any fraudulent purpose or intent in the execution of the deed of assignment. The cause was brought to trial at the September term of court. The verdict of the jury fixed the indebtedness of the several plaintiffs and found that the deed of assignment was made with intent to hinder, delay and defraud plaintiffs and other creditors of the defendant bank.

The general principle governing the rights of creditors in the distribution of assets, set forth in *Hancock v. Wooten*, 107 N. C., 9, gives us but little aid in the decision of this case, by reason of the provisions of our statute, The Code, Sec. 685. The authorities all concur in holding that unless prevented by some statute a corporation as a natural person may convey its property for the benefit of its creditors giving preference, and the creditors may by reducing their claims to judgments acquire liens which will be preserved and protected in proceedings instituted for winding up its affairs in case of insolvency. *Cotton Mills v. Cotton Mills,* 116 N. C., 647; Clark & Marshall on Private Corporations, Sec. 768, Vol. 3, p. 2331. "The appointment of a receiver does not divest the property of prior existing liens, but affects only the manner and time of their enforcement. While the property is in the possession of receivers the right to enforce the liens is suspended because the property is in the custody and control of the court." Beach on Receivers, 194. In this case the two actions were commenced by the issuing of the summons simultaneously. The order appointing the receiver was made subsequent by about twelve hours to the filing of the complaint in the action of Fisher and others, but prior by three days to the service of the summons on the defendant bank in that action. The title of the receiver relates to the date of his appointment. "The courts have now, as a rule, come to the conclusion that the title of the receiver

on his appointment dates back to the time of granting the order, even though certain preliminary conditions must first be performed and the receiver remains out of possession pending such performance." Beach on Receivers, 209; *Worth v. Bank,* 122 N. C., 397; Pelletier v. Lumber Co., 123 N. C., 596; 68 Am. St. Rep., 837; *Bank v. Bank,* 127 N. C., 432. The action is commenced by issuing the summons. The Code, Sec. 199. It would seem to follow that neither party has any priority by reason of the time of beginning their action. It may be that for the purpose of fixing the time when any rights of priority or liens attached, the day of service of the summons, when the party is brought into court, would be the proper time. In the view which we take of this case, however, it is not necessary to decide this question and we leave it open. The plaintiffs base their claim to a lien upon the ground that their action was, as in *Hancock v. Wooten,* 107 N. C., 9, brought for the purpose of vacating a fraudulent assignment and subjecting property put beyond the reach of the creditor, thus bringing it within the definition of a judgment creditor's bill as distinguished from a general creditor's bill. The preferential lien given by courts of equity in such cases is based upon the reason assigned by Chancellor Walworth in *Edmuston v. Lyde,* 1 Paige, 637; 19 Am. Dec., 454, cited by the court in Hancock's case; "On further examination it may seem unjust that the creditor who has sustained all the risk and expense of bringing his suit to a successful determination should in the end be obliged to divide the avails thereof with those who have slept upon their rights or have intentionally kept back that they might profit by his exertions." It was as a reward for his diligence that he was permitted to take the fruits of his recovery. The justice of this rule was strikingly illustrated by the facts in *Hancock v. Wooten;* there the beneficiary under the fraudulent assignment was actively defending the assignment and after the

successful litigation in which the jury found the assignment fraudulent he sought to share in the assets thus brought within the jurisdiction of the court. As was said by the court referring to the defendant Wooten, "He and the plaintiff had been fighting at arm's length, each endeavoring to establish a priority over the other. The plaintiffs have been victorious and the deed having been declared fraudulent and void as to them their preference must be recognized and the claim of the losing party postponed." The difficulty with which the plaintiffs are met in bringing themselves within this principle is found in the fact that either of the actions brought on the 12th of October must necessarily have resulted in the avoidance of the deed of assignment. In no possible point of view could the deed have been valid as against the creditors of the defendant bank after the institution of the suits, or either of them, within the sixty days. The Code, Sec. 685, expressly declares: "Any conveyance of this property, whether absolutely or upon condition, shall be void and of no effect as to creditors of said corporation existing prior to or at the time of the execution of the said deed and as to torts committed by such corporation, its agents or employees prior to or at the execution of the said deed, provided said creditors or persons injured or their representatives shall commence proceeding or action to enforce their claims against said corporation within sixty days after the registration of said deed as required by law." This section of The Code immediately upon the commencement of either of the actions avoided the deed of assignment and there was no necessity for litigating the question as to the intent with which it was made. This court referring to the effect of Section 685 upon conveyances by corporations, in *Langston v. Improvement Co.,* 120 N. C., 132, says: "This being so the real estate of defendant corporation remained liable to plaintiff's debt, notwithstanding the mortgage of defendant corporation to Moye.

Section 685 of The Code, which section has been construed in *Coal Co. v. Electric Light Co.,* 118 N. C., 232. But there is error in the judgment which declares a lien on the property of the corporation. Section 685 of The Code does not authorize the declaration of the lien, but only puts the mortgage out of the way of plaintiff's collecting his debt and leaves the property in the same condition so far as the debt is concerned as if no mortgage had been made." This court has decided in *Bank v. Bank,* 127 N. C., 432, that the deed of assignment made by the defendant bank is void as to creditors bringing their action within sixty days after registration and that no lien is created by the bringing of action. This would seem to be decisive of the plaintiff's contention and to fully sustain the judgment of the court below. Both suits are brought in behalf of the plaintiffs and all other creditors. It will be observed that Section 685 does not require that an action be brought for the purpose of setting aside or vacating the assignment, but that it becomes void and of no effect immediately upon the bringing of an action by the creditor to "enforce his claim." Hence it was unnecessary for the plaintiffs in their action to make any reference to or ask any judgment in respect to the deed of assignment. The finding of the jury in regard to the intent with which the deed was made was immaterial and did not in any respect affect the rights of the creditors. The plaintiffs, therefore, not having by their diligence removed any obstructions to legal remedies or brought into the common fund for distribution any property or assets, do not bring themselves within the principle of *Hancock v. Wooten,* and are not entitled to any lien or preference. His Honor properly adjudged that the deed was void as to the creditors. This left the fund in the hands of the receivers to be distributed under the direction of the court among the creditors. The question in respect to judg-

ment lien was passed upon and settled by this court in the case of *Bank v. Bank,* 127 N. C., 432.

The judgment of the court below is
Affirmed.