### RUTLEDGE et al. v. BRISTOL (two cases).

### RUTLEDGE v. SAME.

#### Nos. 6899, 6915.

Circuit Court of Appeals, Fifth Circuit.

June 29, 1933.

SIBLEY, Circuit Judge, dissenting.

Henry P. Edwards, Dexter Hamilton, and W. J. Rutledge, Jr., all of Dallas, Tex., for appellants in case No. 6899.

Dexter Hamilton, W. J. Rutledge, Jr., Henry P. Edwards, and Wm. H. Clark, Jr., all of Dallas, Tex., for appellant in case No. 6915.

Robert Allan Ritchie, Rosser J. Coke, and Geo. T. Burgess, all of Dallas, Tex., and John Neethe and Maco Stewart, both of Galveston, Tex., for appellee.

Before BRYAN, FOSTER, and SIBLEY, Circuit Judges.

BRYAN, Circuit Judge.

This is a controversy between a state court receiver and a trustee in bankruptcy over the right to take possession of and administer certain assets of the Investment Securities Company, bankrupt. The bankruptcy court decided in favor of the trustee, ordered the First National Bank in Dallas to turn over to him assets which it held under a deed of trust from the Investment Company, and enjoined the receiver appointed by the state court from further attempting to secure possession of such assets. From this order the receiver appeals.

The Investment Company prior to being adjudged a bankrupt on April 16, 1930, was engaged in the mortgage loan business. To secure funds it issued and sold several series of bonds aggregating over $13,000,000. Series A bonds amounted to upwards of a million dollars; they were secured by notes and mortgages held by the bank as trustee under a deed of trust which provided that

if the Investment Company should become and remain in default sixty days the bank as trustee was authorized, and, upon request of the bondholders of a majority in amount of the bonds, was under a duty to declare all bonds due, to sell the notes, and to resort to any judicial remedy necessary or appropriate for the protection and enforcement of the rights and liens of the bondholders. The deed of trust also contained this provision: "The security hereby created and held by said trustee under this indenture shall be enforced only through and by said trustee, but any holder whose bond is due and unpaid may sue said Company thereon and obtain a personal judgment against it." On April 11, 1930, five days before the adjudication in bankruptcy, Rutledge, the appellant here, was by interlocutory decree of a state district court appointed receiver of the funds, notes, and properties held by the bank to secure series A bonds, empowered to demand and receive from the Investment Company or the bank all money, notes, or other evidence of indebtedness held by either under the trust deed covering series A bonds, and to take possession of, manage, control, and sell the same for the purpose of distributing the proceeds ratably among the bondholders entitled to participate. This decree was entered upon a bill filed by B. W. Brown, owner of a $100 bond, and of common and preferred stock of the par value of $12,740. The bill alleged that the Investment Company was insolvent; that in the interest of creditors and stockholders the company should be dissolved and its assets applied to the payment of its debts, any surplus to be distributed among its stockholders; that complainant was interested in the application of trust funds held by the bank to the payment of his bond ratably with other bonds of series A, and also in the distribution of any assets remaining after payment of debts among the stockholders. And the bill prayed for the appointment of a general receiver to take possession of all the assets of the company to the end that it might be dissolved and its affairs wound up. It also prayed that judgment be entered in favor of complainant for the amount of his bond with interest, "together with foreclosure of the lien which in equity exists in his behalf." The decree above mentioned denied the appointment of a receiver of the general assets, and limited the receivership to series A bonds and assets derived therefrom. The holders of series A bonds of the par value of $14,300 intervened, but later all of them except the holder of $1,200 in bonds filed their claims in the bankruptcy court. The bank holds as trustee notes and mortgages of the face value of $990,000, besides $60,000 in cash.

The object of the bill in the state court was to wind up the affairs of an insolvent corporation. It invoked an insolvency proceeding which would be superseded by bankruptcy. In re Watts, 190 U. S. 1, 23 S. Ct. 718, 47 L. Ed. 933; Straton v. New, 283 U. S. 318, 51 S. Ct. 465, 75 L. Ed. 1060; Hooks v. Aldridge (C. C. A.) 145 F. 865. The bill did not seek the foreclosure of a lien held by the plaintiff, and ask for the appointment of a receiver to preserve the property in aid of the suit. It prayed for judgment on plaintiff's bond, it is true, but it did not seek foreclosure by the plaintiff in his own right. According to the terms of the trust deed plaintiff had the right to sue for judgment, but he did not have the right to foreclose. The foreclosure prayed for could only be had by the receiver, who it was intended should supplant the trustee bank. Plaintiff did not ask that the money realized on foreclosure be paid to him, but only that his bond be paid ratably with other bonds out of the proceeds of the foreclosure suit. The bank as trustee had the lien, and under the averments of the bill it only had the right to foreclose. Plaintiff was not entitled to a legal lien before he secured judgment on his bond. He had no equitable lien upon assets in the hands of the bank; under the trust deed he had only a right in equity to have a lien upon such assets established in his favor. Nor does the decree of the state court undertake to establish a lien in plaintiff's favor; it merely purports to authorize the receiver to supplant the trustee bank in the assertion of the common rights in equity of all holders of series A bonds. The state court at the time the trustee in bankruptcy was appointed had not assumed jurisdiction over any assets of the bankrupt. This interlocutory decree went no further than to authorize the receiver to demand of the bank possession of assets. Before the receiver took any step to get possession of the res, bankruptcy intervened and superseded any right he otherwise might have had. The receiver not being in possession of the res cannot complain of the summary order restraining him from interfering with the trustee in bankruptcy.

An appeal was taken from an order of the bankruptcy court referring an application to set aside an injunction issued by the referee back to the referee for his consideration; but that order of the district judge has since been set aside and need not now be considered.

The order of March 23, 1933, from which the main appeal we have been considering was taken, is affirmed. All costs of appeal will be assessed against the appellant Rutledge.

SIBLEY, Circuit Judge (dissenting).

I disagree to the propositions that the state court bill was only one to wind up the affairs of an insolvent·corporation and was therefore superseded by the bankruptcy; that, because the suitor had no right himself to foreclose, the state court at the time of bankruptcy had not assumed jurisdiction over the property in dispute; and that the state court receiver, not having had actual possession, cannot complain of the summary order against him. The bill was twofold. In one aspect the complainant as a stockholder both common and preferred sought dissolution of his insolvent corporation and liquidation of all its affairs. The bill in this aspect may be considered one for a relief over which a court of bankruptcy has paramount and exclusive jurisdiction. The state court itself refused to entertain the bill for this purpose and declined to appoint a general receiver for the corporation. This aspect of the bill becomes of no importance. In its other aspect the complainant sues as a secured creditor, the owner of one of the defaulted series A bonds; he exhibits the instrument conveying to the bank as trustee the pledged notes with their landed security which provides: "Said trustee hereby agrees to hold said cash and notes and deeds of trust so deposited in trust to secure the payment of all bonds, principal and interest, issued or to be issued and certified hereunder, without preference of one bond over another, until all of said bonds are fully paid or otherwise satisfied"; and he sets up that the security is insufficient, the pledged notes are past due and require foreclosure, that land must be bought in and rented out to avoid sacrifice, that the trustee's powers are insufficient to enable it to deal with the situation, and that a receiver is indispensable to preserve, realize on, and distribute the security to the bondholders of whom he is one. By distinct prayers this relief is asked for the benefit of all bondholders, and that·appropriate notice be given them all; and by another prayer he asks a judgment on his own bond "with foreclosure of the lien which in equity exists in his behalf against the funds and properties constituting such trust," with an alternative relief of sharing with all others in the distribution thereof. Other bondholders with bonds aggregating $14,300 were allowed to intervene as complainants and to adopt his allegations as to the trust and join in the prayers for a receiver for it and for ratable distribution. After a hearing on the bill and the interventions and the answer of the bank, the court, while refusing a general receiver, found a necessity for a receiver of the trust and appointed one, directing him to take immediate possession of the trust assets from the bank and to reduce them to cash under the orders of the court for ratable distribution to the bondholders. The bank took an appeal, which it lost on the merits before the Court of Civil Appeals, First National Bank of Dallas v. Brown, 34 S.W.(2d) 412, 413, and the Supreme Court held itself without jurisdiction. 53 S.W.(2d) 604. The appointment therefore stood. The insolvent company, pending the appeal, took voluntary bankruptcy.

The state court did not lose its jurisdiction nor its receiver his rights by the appeal, though long delay was caused. Palmer v. Texas, 212 U. S. 119, 29 S. Ct. 230, 53 L. Ed. 435. The jurisdiction assumed by the state court was to protect and administer specific property in the actual possession of the bank as a trustee for the securing of debts. It differed in no particular from the foreclosure of a mortgage at the instance of a secured creditor where the mortgage is made to a trustee. The state court, affirmed by the Court of Civil Appeals, held that the provision of the trust that the security should be enforced only by and through the trustee was ineffective and void as ousting the jurisdiction of the courts; but whether so or not it could not hinder a beneficiary of the trust from complaining in equity of the trustee, making the debtor and all other beneficiaries parties, in order to seek a preservation of his security and an application of it to its trust purposes. It seems to me wholly immaterial to the court's jurisdiction in equity over the trust that the beneficiaries invoking it were without remedy by direct sale or other action in their own names. At least the validity and application of the stipulation against independent action by bondholders could be submitted to the court for its decision. In fact the trustee bank in its answer set forth that it had declared all the bonds due and was proceeding itself to realize on the security, thus presenting only the question whether it should be superseded by a receiver. Certain it is that a court of equity had as much power to deal with the trust as a court of bankruptcy had.

Undoubtedly a court of bankruptcy has

superior and exclusive jurisdiction of general insolvencies; and state proceedings of that sort whether more than four months old or not yield to a bankruptcy. Straton v. New, 283 U. S. at page 327, 51 S. Ct. 465, 75 L. Ed. 1060; Hooks v. Aldridge (C. C. A.) 145 F. 865; Merry v. Jones, 119 Ga. 643, 46 S. E. 861. The bankruptcy court deals primarily with unsecured debts and with general assets. It seeks only to value and apply the security to secured debts in order that the excess of debt, if any, may be ascertained and proven, and the excess of security, if any, may be administered to general creditors. Yet it has full jurisdiction to deal with secured debts and their securities. Isaacs, Trustee, v. Hobbs Tie & Timber Co., 282 U. S. 735, 51 S. Ct. 270, 75 L. Ed. 645; Whitney v. Wenman, 198 U. S. 539, 25 S. Ct. 778, 49 L. Ed. 1157. Its jurisdiction over securities nevertheless has not been made exclusive, nor has that of the state courts over them been taken away. The result is that the jurisdiction of the two courts over secured debts is concurrent in the sense that either may exercise it if it does not thereby interfere with the other; and in case of conflict the rules of comity between courts of concurrent jurisdiction apply, the principal one being that the court which first assumes jurisdiction over the security to administer it will be suffered to proceed without interference by the other. The bankruptcy court assumes jurisdiction by the mere filing of the petition, and property held by or for the bankrupt passes at once in custodia legis. Isaacs, Trustee, v. Hobbs Tie & Timber Co., 282 U. S. 735, 51 S. Ct. 270, 75 L. Ed. 645. Later proceedings against any of it in a state court are without effect. But this is not because of any superiority in the bankruptcy jurisdiction. "It is but an application of the well-recognized rule that, when a court of competent jurisdiction takes possession of property through its officers, this withdraws the property from the jurisdiction of all other courts which, though of concurrent jurisdiction, may not disturb that possession." Page 737 of 282 U. S., 51 S. Ct. 270, 272. On the other hand, if the state court first takes jurisdiction to enforce a lien on specific property, a subsequent bankruptcy which does not annul the lien will not oust the state court jurisdiction over that property nor vest in the bankruptcy court power to enjoin the state court proceedings. Straton v. New, 283 U. S. 318, 51 S. Ct. 465, 75 L. Ed. 1060. The argument in the cited case again proceeds on the rules of comity. This is no new doctrine, but has been strongly asserted by

the Supreme Court from the beginning. In Peck v. Jenness, 7 How. 612, at page 625, 12 L. Ed. 841, a lien by attachment was before the state court which subsequent bankruptcy was held not to annul; it is said: "It follows, therefore, that the District Court had no supervisory power over the State court, either by injunction or the more summary method pursued in this case, unless it has been conferred by the bankrupt act. But we cannot discover any provision in that act which limits the jurisdiction of the State courts, or confers any power on the bankrupt court to supersede their jurisdiction, to annul or anticipate their judgments, or wrest property from the custody of their officers." It was accordingly held that so far from taking the matter out of the state court the act sent the assignee in bankruptcy into that court to litigate any rights he claimed. In Eyster v. Gaff, 91 U. S. 521, 524, 23 L. Ed. 403, the state court had before it a mortgage foreclosure when the mortgagor took voluntary bankruptcy. It was claimed that the state court's jurisdiction was superseded by that in bankruptcy. Said the court: "It is a mistake to suppose that the Bankrupt Law avoids of its own force all judicial proceedings in the State or other courts the instant one of the parties is adjudged a bankrupt. There is nothing in the act which sanctions such a proposition. The court in the case before us had acquired jurisdiction of the parties and of the subject-matter of the suit. It was competent to administer full justice, and was proceeding according to the law which governed such a suit, to do so. * * * The debtor of a bankrupt, or the man who contests the right to real or personal property with him loses none of those rights by the bankruptcy of his adversary. The same courts remain open to him in such contests, and the statute has not divested those courts of jurisdiction in such actions. If it has for certain classes of actions conferred a jurisdiction for the benefit of the assignee in the circuit and district courts of the United States, it is concurrent with and does not divest that of the State courts." Under the present act in Metcalf Bros. v. Barker, 187 U. S. 165, 23 S. Ct. 67, 71, 47 L. Ed. 122, a lien arose by a creditor's bill with receiver in the state court more than four months before the debtor's bankruptcy. It was held the bankruptcy court had not jurisdiction to enjoin proceedings in the state court. "The State courts had jurisdiction over the parties and the subject-matter, and possession of the property. And it is well settled that where property is in the actual possession of the court this

draws to it the right to decide upon conflicting claims to its ultimate possession and control." In Pickens v. Roy, 187 U. S. 177, 23 S. Ct. 78, 47 L. Ed. 128, the complainant in the state court had also proven her debt in bankruptcy, but this was held not to better the right of the bankruptcy court to interfere with the state court. Pickens v. Roy refers with approval to Frazier v. Southern Loan & Trust Co.. (C. C. A.) 99 F. 707, where, as in the case at bar, the state receiver had not gotten actual possession of the property before bankruptcy, but the jurisdiction of his court was held nevertheless to have effectively attached; Moran v. Sturges, 154 U. S. 256, 14 S. Ct. 1019, 38 L. Ed. 981, where a line was drawn between actual possession and constructive possession by a state court, is not to the contrary. The federal jurisdiction there allowed to attach as against the state court's merely constructive possession was not a concurrent jurisdiction to grant the same relief that the state court could grant, but was an exclusive jurisdiction in admiralty to enforce maritime liens which the state court could not enforce, and the decision was put expressly on that distinction. This court of appeals has steadily maintained that a state court which is enforcing a lien upon specific property when the debtor becomes a bankrupt is entitled to proceed without interference from the bankruptcy court. The latest cases are Bryan v. Speakman (C. C. A.) 53 F.(2d) 463, and Russell v. Edmondson (C. C. A.) 50 F.(2d) 175. In Blair v. Brailey (C. C. A.) 221 F. 1, the decision was put squarely upon the principles of comity between courts of concurrent jurisdiction. Carling v. Seymour Lumber Co. (C. C. A.) 113 F. 483, involved a double-barreled bill like the one at bar was at first, and the court held it superseded by the bankruptcy as to all property save that under the mortgage which was also sought to be foreclosed. The jurisdiction of the state court over the mortgaged property was upheld. I think that case settles this one. See, also, Nelson v. Spence, 129 Ga. 35, 58 S. E. 697; Virginia-Carolina Chemical Co. v. Rylee, 139 Ga. 669, 78 S. E. 27; Employers' Reinsurance Corporation v. Boston Mut. Life Ins. Co. (C. C. A.) 45 F.(2d) 593; Johnson v. Burke Manor Bldg. Corp. (C. C. A.) 48 F.(2d) 1031, 83 A. L. R. 1273; In re Greenlie-Halliday Co. (C. C. A.) 57 F.(2d) 173; Davis v. Railroad Company, Fed. Cas. No. 3648.

The property here involved was not at the filing of the petition in bankruptcy in the possession of the bankrupt or any one for him, but was in the adverse possession of the bank and held for the bondholders. Whether the order appealed from be regarded as made by the referee or by the judge neither of them can rightly by summary proceedings hold off the state receiver who has had constructive possession since the date of his appointment while compelling the bank to deliver possession to the trustee in bankruptcy. The receiver justly complains. A hundred dollar bond seems a small pivot on which to hang a million dollar receivership, but it is a sufficient germ of jurisdiction and was reenforced by $14,300 before the state court acted. If the bill is wrong in purpose or defective in matter, the trustee in bankruptcy ought to become a party to it and press his objection in the state court. The district judge was right in his first opinion which upheld the prior state court jurisdiction, and was wrong in withdrawing and reversing it.